# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

PATTI STUMP,                               )
                                           )
                    Plaintiff,             )
                                           )   Case No. 13-CV-401-JED-TLW
v.                                         )
                                           )
NORTHEAST OKLAHOMA COMMUNITY               )
ACTION AGENCY; JEAN COOPER,                )
                                           )
                    Defendants.            )

## OPINION AND ORDER

### I.      Background

Plaintiff, Patti Stump, was employed by defendant, Northeast Oklahoma Community Action Agency (NEOCAA) from 1976 until her employment was terminated on June 18, 2012 following a Special Meeting of the NEOCAA Board of Directors.  At all times material to this action, Stump was the Assistant Head Start Director for NEOCAA.

NEOCAA is a private, non-profit entity that serves as a community action agency, administering grants that provide community assistance in Northeast Oklahoma.  During the time of Stump's employment, NEOCAA was the grantee of the federal Head Start grant for Craig, Ottawa, and Delaware Counties.  NEOCAA is governed by an 18 member Board of Directors. Defendant Jean Cooper has been the Executive Director of NEOCAA since 1998.  NEOCAA's Board of Directors shares decision making authority with an independent Policy Council in the hiring and firing of key Head Start employees.  Federal regulations require that the Board and Policy Council concur on such employment decisions or otherwise invoke impasse protocols.

NEOCAA has presented evidence of continuous conflict between Ms. Stump and other NEOCAA staff.  As a result, in May 2011, Ms. Cooper commissioned an outside organization

consultant to conduct a complete organizational review of NEOCAA, including the Head Start program, in order to isolate the sources of the conflict. The report of the consultant, which was provided in September 2011, contained specific negative findings regarding Stump, including that she was confrontational and combative with Cooper and did not appear to desire a working relationship with Cooper. There were also suspicions that Stump and Mel Douglas Spillman, who was then the Director of the Head Start program, were engaged in a romantic or sexual relationship, and Cooper met separately with each of them.[1] They both denied any such relationship. On January 12, 2012, almost four months after Cooper inquired about any relationship between Stump and Spillman, Stump filed a charge with the Equal Employment Opportunity Commission (EEOC) complaining about Cooper's inquiry and alleging a hostile work environment.

In April 2012, Cooper discovered that Spillman's granddaughter, as well as several other children who were "over-income" for the requirements of Head Start program eligibility, had been enrolled in the Head Start program ahead of income-eligible children. According to NEOCAA, those enrollments were a serious violation of Head Start Performance Standards and represented a financial liability to the program, and the violations were the direct responsibility of Stump. Cooper suspended Stump and Spillman, pending consideration by the Board of Directors and the Policy Council of Cooper's recommendation for their termination. Stump appealed the suspension to the NEOCAA Board of Directors. Thereafter, before the Board met to consider the appeal and Cooper's recommendation that Stump be involuntarily terminated, the Policy Council provided the Board written notice of the Policy Council's intent to object to Stump's termination.

---

[1]     Mr. Spillman, who was initially a plaintiff in this action, died following the filing of suit, and the Court dismissed him from this action pursuant to Fed. R. Civ. P. 25(a)(1).  (Doc. 35).

The Board of Directors met on June 18, 2012. It considered the relinquishment of the Head Start grant to avoid the otherwise inevitable impasse protocol that would be necessitated by the Policy Council's refusal to concur in a decision to terminate Stump's employment. At the June 18 meeting, the Board of Directors denied Stump's appeal and voted to terminate her employment. Recognizing that the Policy Council objected to that decision, the Board also voted to relinquish the Head Start grant. Thereafter, the federal government contracted with an independent company to administer the Head Start program, and the employment relationships between NEOCAA and all Head Start staff were terminated.

Ms. Stump brought this lawsuit against NEOCAA and Ms. Cooper. Stump contends that the defendants violated Title VII of the Civil Rights Act of 1964, and that her employment was terminated in retaliation for filing the January 2012 EEOC complaint. However, the cornerstone of her Complaint, and the entire focus of her summary judgment briefing, is her argument that the decision to terminate plaintiff "violated the provisions of the Head Start Act 642(c)(2)(D)(vii) [sic] and the Head Start Performance Standards § 45 C.F.R. 1304.50(d)(1)(xi) [sic]." (Doc. 1 at 4-5, ¶ 25; *see also* Doc. 46 at 2). Plaintiff contends that those provisions require "shared decision making on all termination decisions." (Doc. 46 at 2).[2]

---

[2]     It appears that Ms. Stump intended to cite 42 U.S.C. § 9837(c)(2)(D)(vi), which provides, *inter alia*, that a policy council created under the Head Start Act "shall approve and submit to the governing body decisions about each of the following activities: . . . Program personnel policies and decisions regarding the employment of program staff, consistent with paragraph (1)(E)(iv)(IX), including standards of conduct for program staff, contractors, and volunteers and criteria for the employment and dismissal of program staff." The regulation cited by Ms. Stump, 45 C.F.R. § 1304.50(d)(1)(xi), provides that "Policy Councils . . . must work in partnership with key management staff and the governing body to develop, review, and approve or disapprove the following policies and procedures: . . . Decisions to hire or terminate any person who works primarily for the Early Head Start or Head Start program of the grantee or delegate agency."

## II. Discussion

### A. Employment Discrimination and Retaliation Claims

Although Ms. Stump's Complaint alleges a hostile work environment, discrimination, and retaliation in violation of Title VII, she does not even mention those claims in her response to NEOCAA's summary judgment motion. Indeed, it appears that she has completely abandoned those claims, as her response does not contain a single reference to any claim or evidence of discrimination, hostile work environment, or retaliation.[3]

As set forth in NEOCAA's motion and exhibits, Stump admitted at her deposition that there was no improper discrimination based upon any protected status. (*See* Doc. 39 at ¶ 13 and cited deposition excerpts at Doc. 39-4). She also admitted that there was no protected status-based hostile work environment (Doc. 39-4 at 69-70). Her definition of hostile work environment was simply "[v]ery unpleasant working conditions," which applied to staff in the Head Start office and included "accusing people of this or that or leaving confidential information out of employees checks and routing numbers . . . telling staff that, hey, this person borrowed from their annuity, go ask them how much - - how they did it and how they liked it." (Doc. 39-4 at 68-69).

---

[3] While Stump generally purports to "dispute" several undisputed facts in NEOCAA's motion, she provided no evidence that established a dispute of material fact. All of the exhibits submitted by Stump relate solely to her claim that the Policy Council and Board disagreed as to the decision to terminate her. She did not provide any evidence to dispute NEOCAA's evidence that there was continuous conflict between Stump and Cooper and that Stump was responsible for the improper Head Start enrollment of children who were "over-income" for the requirements of Head Start program eligibility ahead of income-eligible children. Where, as here, the movant has provided evidence supporting its statement of undisputed facts, the non-moving party must cite to evidence showing that there is a dispute of fact. Fed. R. Civ. P. 56(c)(1). Because Stump failed to do so, the Court may consider the movant's facts to be undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

With respect to her retaliation claim, Stump has not identified any evidence that her filing of the EEOC charge in January 2012 was a but-for cause of her termination nearly five months later. Again, any argument or evidence relating to retaliation is completely absent from her response brief, and it appears that she has abandoned that claim.

There is no genuine dispute of material fact with respect to plaintiff's claims of employment discrimination, hostile work environment, or retaliation, and the Court concludes that NEOCAA is entitled to judgment as a matter of law on those claims.

B.       Alleged Violations of the Head Start Act

Ms. Stump's entire response brief is dedicated to her claim that the termination of her employment was in violation of federal Head Start provisions, because the Policy Council did not agree with the Board of Directors with respect to the termination of her employment. (Doc. 46). However, Stump has not provided *any* authority in support of her assertion of a private right of action for the termination of her employment under the Head Start Act or regulations. Other district courts addressing this issue have determined that the Head Start statutes and regulations do *not* provide a private right of action to terminated employees. *See, e.g., Hodder v. Schoharie Cty. Child Dev. Council, Inc.*, No. 95-CV-557, 1995 WL 760832 (N.D.N.Y. Nov. 14, 1995); *Johnson v. Quin Rivers Agency for Comm. Action, Inc.*, 128 F. Supp. 2d 332 (E.D. Va. 2001); *Holocheck v. Luzerne Cty. Head Start, Inc.*, 385 F. Supp. 2d 491 (M.D. Pa. 2005); *Addison v. City of Detroit-Dep't of Human Servs.*, No. 12-12793, 2013 WL 1278954 (E.D. Mich. Mar. 27, 2013).

The plaintiffs in *Hodder* were employed by a Head Start grantee and were terminated for being uncooperative and insubordinate after the hiring of a new executive director. Like Ms. Stump here, the *Hodder* plaintiffs filed suit, alleging that their dismissals violated the Head Start

Act and related regulations because "the Policy Council must approve terminations, which did not happen in this case." *Hodder*, 1995 WL 760832 at *2. After thoroughly analyzing the purpose, history and text of the applicable Head Start laws, the district court concluded that terminated employees are not within the class of persons "for whose special benefit Congress enacted the Head Start Act," and the act did not create any express or implied private right of action for discharged employees. *Id.* at *2-8.

Similarly, in *Holocheck*, a former Head Start employee filed suit, alleging that Head Start regulations provided an independent right "not to be terminated in violation of the written Personnel Policies and Practices of [the Head Start grantee]." 386 F. Supp. 2d at 501. The court noted the statutorily-stated purpose of the Head Start Act and determined that the plaintiff, a Head Start teacher, was not in the class of the legislation's intended beneficiaries and there was no statutory provision that conferred a private right to continued employment in the Head Start program. Accordingly, the court dismissed the plaintiff's claim that the Head Start regulations provided a cause of action. *Id.* at 501-02.

In *Johnson*, 128 F. Supp. 2d at 336-37, the court determined that "[t]here is no provision in the Head Start Act . . . permitting a private citizen to enforce its provisions" and thus dismissed with prejudice the plaintiff's claims alleging violations of statutory and regulatory provisions relating to the Head Start Act. In *Addison*, 2013 WL 1278954, at *4-6, a former employee who was paid through a Head Start grant sued after being notified that she was laid off after the Head Start grant was unilaterally relinquished, allegedly in violation of Head Start regulations. The court dismissed the action, concluding that "there is no private right of action for an alleged violation of the Head Start Regulations." *Id.* at *4.

The Court agrees with the reasoning in *Hodder*, *Johnson*, *Holocheck*, and *Addison*. The stated purpose of the Head Start Act is "to promote the school readiness of low-income children by enhancing their cognitive, social, and emotional development—(1) in a learning environment that supports children's growth in language, literacy, mathematics, science, social and emotional functioning, creative arts, physical skills, and approaches to learning; and (2) through the provision to low-income children and their families of health, educational, nutritional, social, and other services that are determined, based on family needs assessments, to be necessary." 42 U.S.C. § 9831. Terminated employees of Head Start grantees are not within the class of persons who are the intended beneficiaries of this legislation. Moreover, as noted in the foregoing authorities, the applicable statutory provisions do not provide any express private right of action for Ms. Stump, and no such right can be implied under the circumstances.

## III. Conclusion

For the foregoing reasons, the Motion for Summary Judgment (Doc. 38) is **granted**. A separate Judgment will be entered forthwith.

IT IS SO ORDERED this 30th day of June, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE